## DANDREA v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. August 13, 1925.)

No. 6678.

1. Intoxicating liquors ⚖️236(4)—Evidence held insufficient to convict of sale on theory of defendant being proprietor.

Evidence on prosecution for sale of liquor by another (an aider or abettor being, under Criminal Code, § 332 [Comp. St. § 10506], a principal) *held* insufficient for conviction on theory of defendant being proprietor of place, there being lacking substantial evidence that he was proprietor at the time of sale, as well as that sale was made with his knowledge and

consent, or on his behalf and as part of his business, and under such circumstances that he must be held to know that such sales were being made.

2. Criminal law ⚖️394—Intoxicating liquors ⚖️248—Affidavit and complaint held not to furnish "probable cause" for issuance of search warrant.

Under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), and Espionage Act, tit. 11, §§ 3–5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼c–10496¼e), search warrant was issued without "probable cause," so that evidence obtained thereby was incompetent on prosecution for possession of liquor at the place searched; affidavit and complaint, stating as basis, other than conclusions, only that 43 days before liquor was purchased there, this not being self-sufficient to show a present existing cause.

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Criminal prosecution by the United States against Phillip Dandrea and another. Judgment of conviction, and defendant Dandrea brings error. Reversed.

W. A. Pittenger, of Duluth, Minn., for plaintiff in error.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn.

Before SANBORN, LEWIS, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. Plaintiff in error and one Jacobs were tried on a criminal information charging them in the first count with possession of intoxicating liquor at 629 West Superior street, in Duluth, St. Louis County, Minn., on the 1st day of February, 1923, and in the second count with a sale at the same place on the 19th of December, 1922, in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). Dandrea was found guilty on both counts. Jacobs was found guilty on the first count only; the second count being dismissed as to him at the close of the evidence. Dandrea alone has sued out a writ of error.

[1] The evidence to support the charge of sale consisted of the testimony of Herman Miller, a prohibition agent of five weeks' experience. He testified that about 8 o'clock in the evening of December 19, 1922, he met a stranger on the sidewalk in the vicinity of the premises mentioned, and after a short talk went into the building on the ground floor. On one side of the room was a fruit stand and a lunch counter. On the other side were showcases with tobacco

and confectionery. Further along was a soft drink bar. Dandrea was behind the showcase containing candy. Another man was behind the soft drink bar. Miller and the stranger went to the middle of the soft drink bar, and the stranger asked the bartender for a drink of "moon." The bartender took from the work bench under the bar an 8-ounce glass containing liquor, and poured a drink into a small glass. Miller drank it. The stranger also had a drink. Miller paid for the two drinks 50 cents. The liquor, in the opinion of Miller, was moonshine whisky. He had had some experience with odor and taste of intoxicating liquors. While this transaction was taking place, Dandrea was distant about 16 feet behind the candy counter. Miller was unable to testify that Dandrea heard what was said, or saw what was done. There was no evidence that Dandrea said anything or did anything which indicated that he was proprietor of the place. Miller, on being confronted with defendant Jacobs, testified that he was not the man who made the sale. This count was, upon this showing, dismissed as to defendant Jacobs. Miller had been in the place once before, and bought gum of Dandrea, but was not in the place after December 19th. There was no evidence whether Dandrea employed the man behind the bar, or was employed by him; no evidence that Dandrea owned or had a lease of the premises. One of the other government witnesses testified that Dandrea on February 1, 1923, the date of the possession count, admitted that he was proprietor of the place and had been for quite a while, but the length of time was not stated. One of the government witnesses also testified that in the preceding July he was on the premises and saw Dandrea serve two men with something to drink; that he detected an odor of moonshine whisky. There was no evidence that Dandrea was proprietor of the place at that time.

At the close of the evidence a motion was made in behalf of Dandrea for a directed verdict on the sale count. It was denied. We think it should have been granted. It is well settled that it is not necessary, in order to convict the proprietor of a place, to prove that he personally made the sale charged. It is sufficient that the sale be shown to have been made with his knowledge and consent, or that the sale be shown to have been made on his behalf and as part of his business, and under such circumstances that he must be held to know that such sales were being made. Common-

wealth v. Stevens, 155 Mass. 291, 29 N. E. 508; 16 Corpus Juris, § 106 et seq.; Heitler v. United States (C. C. A.) 280 F. 703; Dukich v. United States (C. C. A.) 296 F. 691; Nobile v. United States (C. C. A.) 284 F. 253.

In so far as offenses against the United States are concerned, section 332 of the Criminal Code (Comp. St. § 10506) comprehensively covers the field. It reads: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." See Heitler v. United States, supra; Dukich v. United States, supra; Nobile v. United States, supra.

The fatal weakness of the case at bar, however, is that there was no substantial evidence to bring it within the rules stated, even if there had been evidence that Dandrea was proprietor of the place at the time of the sale; but such evidence was also lacking.

[2] The possession count as to both defendants rested upon the evidence which was obtained upon a search of the premises February 1, 1923. By timely motions to suppress evidence, to have the court withdraw its permission to file the information, to quash the information, and in arrest of judgment, the evidence thus obtained was challenged on the broad ground that the search warrant was invalid, and the evidence obtained by means of it incompetent.

The foundation for the search warrant was a complaint verified on belief by a prohibition agent, C. E. Benson; the foundation for the complaint was an affidavit by Prohibition Agent Miller. They are as follows:

"Affidavit.

"State of Minnesota, County of St. Louis —ss.:

"Herman Miller, being first duly sworn, deposes and says that on the 19th day of December, A. D. 1922, he was in the confectionery store located at 629 West Superior street, Duluth, Minnesota, and which said confectionery store is situated in a three-story brick building, and there purchased from one John Doe, whose name is unknown, and who is described as follows: about 5 feet 11 inches tall, weighs about 190 pounds, about 40 years of age, smooth-shaven, and is light complexioned—certain intoxicating liquor, to wit, 2 drinks of white moonshine whisky, paying therefor the sum of 50c. (fifty cents).

"Affiant further states that he is familiar with the taste, odor, color and other physical properties of moonshine whisky, and knows that the liquor sold to him on this occasion was such moonshine whisky. Affiant further states that moonshine whisky then and there was and now is kept on the said premises for sale.

"Further deponent sayeth not.

"Herman Miller.

"Subscribed and sworn to before me this 1st day of February A. D. 1923.

"J. C. Herman Engel,

"U. S. Commissioner for Dist. of Minn."

"Complaint.

"State of Minnesota, County of St. Louis —ss.:

"Be it remembered that on the 1st day of February, 1923, before me, J. C. Herman Engel, a United States commissioner for the state and district of Minnesota, personally appeared C. E. Benson, who, being duly sworn, says that he is a federal prohibition agent, and that he has good reason to believe, and does believe, that intoxicating liquor is being sold and the National Prohibition Act is being violated by one John Doe, name unknown, located at 629 West Superior street, in the city of Duluth, county of St. Louis, and state of Minnesota, and the violation is occurring at 629 West Superior street, Duluth, Minnesota, and more particularly on the premises described as follows: A confectionery store, so called, and entire first floor and basement outbuildings of three-story brick building located at 629 West Superior street in the city of Duluth, county of St. Louis, and state of Minnesota;

"The belief of this affiant is found upon the following facts: That he has an affidavit hereto attached by one Herman Miller to the effect that on the 19th day of December 1922 he purchased intoxicating liquor in said place;

"Wherefore the above affiant prays for the issuance of a search warrant to search the above-described premises, for the purpose of securing any intoxicating liquor or instruments or materials designed for the manufacture of intoxicating liquor which may be found therein.

"C. E. Benson.

"Subscribed and sworn to before me this 1st day of February, 1923.

"J. C. Herman Engel,

"U. S. Commissioner for Dist. of Minnesota."

It may be observed that both are dated February 1, 1923. It is to be noted that the complaint has no other basis than the affidavit of Miller; it is expressly so stated in the complaint. This being so, it is next to be noted that there is no foundation whatever for the expressed belief that violation of the National Prohibition Act was occurring in the basement or outbuilding of the premises 629 West Superior street, because the affidavit contains no mention of either. Nor is there any foundation for the prayer of the complaint to search for materials and instruments designed for the manufacture of liquor. We may pass these by, however, as merely illustrations of the loose practice which obtained.

But the vital defect of the complaint is the lack of foundation for a belief that liquor was being sold on the premises. This belief is apparently based on the statement in the affidavit of Miller that "moonshine whisky * * * now is kept on the said premises for sale." The only basis claimed for this statement in the affidavit is the preceding statement by Miller in the affidavit that on the 19th of December, 1922, he bought "moonshine" on the premises. According to his testimony in court, he knew nothing about the premises subsequent to December 19, 1922. He never visited the place afterward. He never had the place checked up afterward. Yet he swears on the 1st of February, 1923, 42 days after the sale, that whisky is being kept on the premises for sale—something about which he confessedly had no knowledge. It may be said that this lack of foundation for the statement in the affadvit did not appear at the time the motion to suppress was made before the trial. But these motions were all renewed at the close of the evidence, after such lack of foundation had appeared from the testimony of Miller himself.

The statement in the affidavit that Miller had on the 19th of December, 1922, bought two drinks of moonshine whisky from John Doe on the premises was not a sufficient foundation for a complaint and a search warrant on February 1, 1923. The affidavit does not state that the John Doe, from whom the whisky was said to have been purchased, was the owner or proprietor of the place, or even an employé in charge. It does not state that any other liquor was seen on the premises, or even that there was any indication of other sales.

Section 25 of title II of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m) provides, amongst other

things: "A search warrant may issue as provided in title XI of Public Law numbered 24 of the sixty-fifth Congress, approved June 15, 1917." This is commonly known as the Espionage Act (40 Stat. 228). Section 3 of that title (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼c) reads: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched." Section 4 (Comp. St. 1918, Comp. St. Ann. 1919, § 10496¼d) reads: "The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them." Section 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼e) reads: "The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist."

In Dumbra v. United States, 45 Sup. Ct. 546, 69 L. Ed. ——, U. S. S. C. May 25, 1925, the court said:

" 'Probable cause' has been defined by this court as 'reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged.' Stacey v. Emery, 97 U. S. 642, 645, 24 L. Ed. 1035. In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched; and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."

In United States v. Dziadus (D. C.) 289 F. 837, 841, the court said:

"In the case at bar, the allegations that contraband property had been found on the premises three months prior to the date of the affidavit, which presumably was then seized and carried away, can hardly be regarded as a statement of fact required by the statute, and which in this case would be that the residence is being used for the un-lawful sale of intoxicating liquor. The warrant is clearly bad on that ground."

The evidence before the judge or commissioner who issues the search warrant must be such as would be admissible on trial. Giles v. United States (C. C. A.) 284 F. 208, 214. The commissioner must be furnished with facts—not suspicions, beliefs, or surmises. Veeder v. United States, 252 F. 414, 164 C. C. A. 338. A mere conclusion is insufficient either in the affidavit or the complaint. United States v. Kaplan (D. C.) 286 F. 963, 969. The facts in the complaint or the affidavit upon which the search warrant is based must show a self-subsisting ground for the issuance of the warrant. United States v. Casino (D. C.) 286 F. 976.

In the instant case the time elapsing between the sale on which the affidavit was based and the making of the affidavit on which the search warrant was issued was 42 days. This we hold was such a length of time as to destroy the effect of the sale as a foundation for a search warrant for present violation, in the absence of any other relevant facts. Time is a material factor in several steps connected with search warrants. By section 11 of title XI of the Espionage Act (section 10496¼k), 10 days only are allowed in which to serve the search warrant. After that time the search warrant is void.

Whatever effect might be given to the allegation in the affidavit of the present existence of liquor on the premises was wholly lost by the disclosure of the lapse of time without a showing of a continuing knowledge on the part of the affiant. Reasonably short periods of time have been held unimportant. Thus in Murby v. United States (C. C. A.) 2 F. (2d) 56, 4 days had elapsed between the sale and the affidavit for search warrant; in United States v. McKay (D. C.) 2 F. (2d) 257, 12 days had elapsed; in Hawker v. Queck (C. C. A.) 1 F. (2d) 77, 21 days had elapsed. In this latter case, however, the premises were a hotel and saloon, and so described. On the other hand, in the case of People v. Chippewa Circuit Judge, 226 Mich. 326, 328, 197 N. W. 539, 540, where more than 60 days had elapsed between the making of the affidavit and the application for a search warrant, the court said:

"A search warrant must issue, if at all, upon an existing cause. A search warrant is no general arm for ferreting out crime, but a special proceeding, based on present cause, hedged by strict constitutional provisions, must be speedily executed, and cannot

be issued on a showing of facts existing over 60 days before, and not in any way brought down to the date the warrant is issued."

See, also, Rupinski v. United States (C. C. A.) 4 F.(2d) 17.

We find no case where the elapsed time between affidavit and search warrant was as great as in the case at bar, and where the search warrant was still held valid. We hold that the search warrant was issued without probable cause, and that the motion to suppress the evidence obtained should have been granted.

Judgment reversed.