380 A.2d 431

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Thomas McGINN, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1976.

Decided Dec. 2, 1977.

Vram Nedurian, Jr., Assistant District Attorney, Media, with him Ralph B. D'Iorio, Assistant District Attorney, Media, for the Commonwealth, appellant.

John Rogers Carroll, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

On August 6, 1975, Pennsylvania State Police officers conducted a search of appellee's residence pursuant to a search warrant. The search uncovered various pool selling and bookmaking paraphernalia, and, as a result, appellant was indicted for violations of 18 Pa.C.S. § 5514.

Appellee filed a motion to suppress the seized evidence, alleging, *inter alia*, that the warrant was not applied for, issued, and executed in conformity with the requirements of Pa.R.Crim.P. 2001–10, and that the affidavit filed in support

of the warrant did not establish probable cause. At the suppression hearing, Trooper James L. Anderson was cross-examined about telephone calls which he made or observed being made to appellee for the purpose of placing bets. Appellee's attorney asked Trooper Anderson to explain specifically his statement that records of the calls were made shortly after the calls were completed. Trooper Anderson answered as follows:

"A. I believe they were made in the car. In Trooper Taylor's car. We had him with the informant—I'm sorry. I'm going to August 5th. The phone call on the 30th was made from the informant's residence. I can't be sure whether that was made in the motel or in the car on the way to the motel after the phone call.

Q. Well, now, geographically, where were you when this call was made?

THE COURT: Which call are we talking about?

MR. CARROLL: The call of July 30th, sir.

A. You are talking about the informant's house?

THE COURT: He's asking you where you were.

THE WITNESS: At the informant's house.

THE COURT: All right. Geographically, where is that?

THE WITNESS: Well, the best I could—that I would prefer to answer that is Eastern Pennsylvania. Southeastern Pennsylvania.

BY MR. CARROLL:

Q. Is it in Delaware County?" [NT 20–21]

Trooper Anderson refused to answer the last question because the answer might have revealed the identity of his informant. The court disagreed and insisted that the trooper answer. When the trooper still refused, the court granted appellee's motion to suppress. We reverse the order of the lower court.

There are two competing interests involved in this case. The first is the Commonwealth's interest in protecting and encouraging informants. *See, e. g., Commonwealth v. Gar-*

*vin*, 448 Pa. 258, 293 A.2d 33 (1972). The second is the defendant's interest in testing the veracity of facts establishing probable cause in an affidavit. *See Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973).

■ As we noted in *Commonwealth v. Williams*, 236 Pa. Super. 184, 345 A.2d 267 (1975), there is no set rule for determining when the Commonwealth's privilege to withhold an informant's identity will be withdrawn. "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Rovario v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1967).

■ Before the Commonwealth will be forced to reveal an informant's identity, there must be some showing that revelation is necessary. For example, the informant's identity may be necessary to the defense where the evidence against the defendant proceeds solely from the testimony of police officers, and the only relatively neutral eyewitness to the crime is the informant. See *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967). Other situations where the informant's identity would be helpful are where the defendant alleges entrapment or where there is an identification issue. *See Commonwealth v. Williams, supra.*

In this case, appellee has raised none of the above issues; in fact, he was not actively seeking disclosure of the informant's identity. Appellee did not file a Bill of Particulars, and he did not and does not contend that knowledge of the informant's identity would have helped in the preparation of his defense. Appellee only sought the location from which certain telephone calls had been made. This information undoubtedly would have been helpful to test the veracity of the statements in the affidavit. Unfortunately, due to the witness' answer on cross-examination, revelation of the location from which the calls were made might have revealed the identity of the informant.

The countervailing interest asserted by the appellee was first explicated in this Commonwealth in *Commonwealth v.*

*Hall, supra.* In that case, the defendant sought to cross-examine the affiant concerning the allegation in the affidavit that information supplied by the informant had led to the arrest and conviction of numerous other individuals. The defendant sought to test this allegation by asking for the names of the other individuals. The supreme court held that the defendant was entitled to the names. "[T]he veracity of facts establishing probable cause recited in an affidavit supporting a warrant can be challenged and examined at a suppression hearing." 451 Pa. at 204, 302 A.2d at 344.

That decision of the supreme court, however, is tempered by a number of factors. First, a concurring opinion in which two other justices joined pointed out that the sole purpose of allowing inquiry into the recitation of facts in the affidavit is to facilitate the discovery of intentional misrepresentation of material facts by police officers. *See also Commonwealth v. Monte,* 459 Pa. 495, 329 A.2d 836 (1974); *Commonwealth v. Jones,* 229 Pa.Super. 224, 323 A.2d 879 (1974). The concurring opinion also noted that inquiry was not unlimited and that not every misrepresentation would require suppression.

Another important point to recognize about *Commonwealth v. Hall* is that it represents the minority view. Most jurisdictions do not allow an attack to proceed beyond the face of the affidavit. *North Carolina v. Wrenn,* 417 U.S. 973, 94 S.Ct. 3180, 41 L.Ed.2d 1144 (1974) (Dissenting opinion of Mr. Justice White).

Finally, it is instructive to observe that in *Hall,* the defendant did not seek the name of the informant and the information he sought would not have revealed the informant's identity. Here, unlike in *Hall,* the information sought by appellee might have revealed the informant's identity. Furthermore, appellee was not precluded from testing the veracity of the affidavit with other questions.

Thus, we are faced with a difficult choice between two important interests. If we find in appellant's favor, appellee is still entitled to a fair determination of his guilt or

innocence, including the right to continue with his attack on the affidavit. If we find in appellee's favor, the case is terminated. Under the circumstances, we believe that the Commonwealth's interest in prosecuting offenders outweighs the appellee's interest in attacking the affidavit with the specific questions presently at issue. Therefore, the order of the lower court is reversed and the case is remanded for proceedings consistent with this opinion.

SPAETH, J., files a dissenting opinion in which HOFFMAN and CERCONE, JJ., join.

SPAETH, Judge, dissenting:

I think our decision here is controlled by *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973).

Unlike the majority, I regard as wholly *un*important "that [*Hall*] represents the minority view," At 174. If the majority will say why it believes *Hall* poorly reasoned (I do not), perhaps the Supreme Court may be persuaded to overrule it; until then, agree with it or not, this court must follow Hall where it applies.

The majority says *Hall* does not apply because there "the defendant did not seek the name of the informant and the information he sought would not have revealed the informant's identity." At 174. I suggest, however, that the same is true here.

In *Hall* the application for the search warrant on its face recited probable cause. The application stated that an informant had told the officer that narcotics were being sold in a certain apartment, and that the informant had been proved reliable because "5 arrests and 3 convictions" had resulted from information supplied by the informant. During the hearing on the motion to suppress, defense counsel asked the officer who had sworn to the application the names of the persons arrested. "The purpose of the question was to explore the veracity of the facts recited in the affidavit supporting the warrant. Counsel expressly disavowed any intention of ascertaining the identity of the informant, and,

to further protect the informant's anonymity, offered to conduct the cross-examination in camera." *Commonwealth v. Hall, supra* 451 Pa. at 203–04 (footnote omitted), 302 A.2d at 343. The hearing judge refused to permit the cross-examination. Reversing, the Supreme Court reasoned: that the warrant could issue only on the magistrate's detached and objective determination of probable cause; that a false application effectively precluded such a determination; and that as a practical matter, cross-examination was the only way counsel could test whether the application was false. *Id.* 451 Pa. at 205–07, 302 A.2d at 345.

Here the application for the warrant stated:

On 30 July of '75 Troopers Anderson and Taylor met with the same confidential informant who stated that he could call Tom [appellee] at 494–3991 and place horse bets over the phone. At 1:30 p. m. informant dialed that number 494–3991 in the presence of both Officers and placed horse bets in excess of the amount of $100.

N.T. 7.

This statement, it will be observed, is even more material than was the statement in *Hall* about the five arrests, for it goes not merely to the reliability of the informant but to the alleged criminal act itself. Trooper Anderson testified at the hearing on the motion to suppress, and read the application, including the statement just quoted, into the record.

In considering defense counsel's cross-examination of Trooper Anderson it is important to start at the beginning. At the beginning of cross-examination the trooper identified certain yellow sheets of paper, which he had consulted during direct examination, as containing notes about the telephone call. N.T. 18. He went on to say that the notes were not made at the same time the telephone call was made but "shortly after." N.T. 20. When asked to "define the term shortly after," he replied:

The phone call on the 30th was made from the informant's residence. I can't be sure whether that was made in the motel or in the car on the way to the motel after the phone call.

N.T. 20–21.

It was at this point that the trooper was asked whether the informant's residence was in Delaware County, and refused to answer beyond saying that the residence was in "Southeastern Pennsylvania." N.T. 21.

I see no distinction between defense counsel's cross examination here and the cross-examination in *Hall*. Here, as in *Hall*, counsel was not seeking the identity of the informant, but was testing the truth of the application for the warrant;[1] nor can I accept the majority's statement that the trooper's "answer might have revealed the identity of his informant." At 173. As explained by the hearing judge in his opinion to this court:

> If McGinn could show that a telephone call was not made at 1:30 p. m. on July 30, 1975, as stated in the criminal complaint, then one of the facts used to establish probable cause would be missing. It may well be that without that missing fact the District Justice could not or would not have found cause for issuing the search warrant.
>
> Trooper Anderson testified that the phone call was made from the informant's residence, and that the note from which he testified, as to that call, was made "in the motel or in the car on the way to the motel after the phone call".
>
> Once Mr. McGinn's attorney established the place where the telephone call was made, it is quite obvious that he would establish the location of the motel. The distance between the place where the telephone call was made and the location of the motel would tend to establish the time that elapsed between the time the call was made and the time that the note was made. This in turn would cast light on the accuracy of the note.

1. Indeed, my journal notes (which I do not entirely trust since we hear so many cases) is that defense counsel told this court during oral argument that at the time of the suppression hearing he knew who the informant was, and that the informant was in the hearing room.

To have sustained the Commonwealth's objection to the cross-examination would have unduly limited Mr. McGinn's right to cross-examination.

Further, as the Court stated at the hearing, with over a half a million people residing in Delaware County to have Mr. McGinn learn whether the call was made in or out of Delaware County would not tend to disclose to him the identity of the informer.

Slip Opinion of Lower Court at 7–8.[2]

Given the propriety of defense counsel's cross-examination, the hearing judge in my opinion was right to grant the motion to suppress when the trooper refused to respond to the cross-examination. Cross-examination is not a privilege but a right guaranteed an accused by the confrontation clause of the Sixth Amendment. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The majority says that on remand, defense counsel will not be "precluded from testing the veracity of the affidavit with other questions." At 174. I do not know what that means. What other questions? Are there other questions that will go as directly to the point as the one the

**2.** The hearing judge also noted in his opinion that the first count of the indictment charges appellee with gambling on August 6, 1975, "and divers other occasions prior thereto," and said:

Obviously, the Commonwealth was contending that one of the "divers other occasions" was July 30, 1975. In such case the testimony of the person who made the telephone call would be relevant and helpful to McGinn's defense. Where disclosure of the informant's identity is relevant and helpful to the defendant or essential to the fair determination of the case the Commonwealth must disclose the identity of the informant. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1967); *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967). As to the "divers other occasions", it may well be that McGinn is entitled to have the informant's identity revealed.

Slip Opinion of Lower Court at 8.

I express no opinion on this issue, which can only be decided upon an appropriate motion for disclosure of the informant's identity. I do note, however, that until such a motion is made the *Roviaro-Carter* balancing test does not become applicable; the majority's discussion of the test is therefore premature.

majority says the trooper need not answer? In any event, one may be sure that fortified with the majority's opinion, the trooper will continue to refuse to respond to cross-examination. As far as I am concerned, one refusal is enough.

The order of the lower court should be affirmed.

HOFFMAN and CERCONE, JJ., join in this opinion.