393 A.2d 1035

COMMONWEALTH of Pennsylvania

v.

Robert STAMPS, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 14, 1977.

Decided Nov. 3, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

The appellant, Robert Stamps, after trial before a judge sitting without a jury, was convicted of possession of a controlled substance and possession with intent to deliver a controlled substance. Arrest of judgment was granted on the delivery charge.

On this appeal, the appellant raises two claims of error. Appellant first claims there was no probable cause established for the issuance of a search warrant, pursuant to which appellant's apartment was searched by the police. His second argument is that the evidence was insufficient to sustain his conviction for possession of a controlled substance.

The record shows that on February 19, 1976, Philadelphia police officer Victor Marcone received information from an informant, that within the preceding ten days the informant had seen the appellant in the possession of ten bundles of heroin. The informant had made his observation in the appellant's second floor apartment at 1211 South 47th Street in Philadelphia. The informant further stated that the appellant told him that the heroin would be sold for eight hundred dollars ($800.00) to a person named Roy. The informant further related that he had observed the appellant, on another occasion, depart from his apartment with three bundles of heroin which he intended to sell at a bar. The informant also advised officer Marcone of the appellant's phone number, which police found to be registered to the appellant at the South 47th Street address. The informant had provided officer Marcone with information in the past which had led to approximately eight to ten arrests resulting in confiscations of illicit goods.

As a result of receiving this information, the police conducted a surveillance of appellant's residence on February 23, 1976. On the same date, Officer Marcone sought and

obtained a search warrant for the appellant's apartment. In support of the application for the warrant, the following was set forth as probable cause:

I policeman # 4334 having received information from a reliable informant 2–19–76 that he was inside of the above location in the past 10 days and did see the above named person have in his possession approximately 10 bundles of alleged heroin which he stated to the informant was for one person named Roy who was coming over in half an hour to buy the stuff for $800.00. This informant stated that there were approximately five other persons in this apartment and that he would not be sure who to blame if it link out to the cops about this certain transaction. The informant also stated that he on another date seen the above named person called (Brother Rob) leave this apartment with three bundles of heroin on his possession and was going to the bar to sell them to two different persons. This informant also stated that this person phone number is 3498533 and that before any of the above customers come over they always call. This informant in the past two years has given me information which has resulted in a number of arrests with evidence confiscated on all arrests. A check with the phone company of the number supplied to me by this informant was made and found it to be in the name of the above living at the above location. On 2–23–76 from approximately 11:20 a. m. to 11:50 a. m. a surveillance was conducted at the above location and two persons were seen entering and having this location after staying only a short period of time, one of the persons being a white male. Due to the information received from this reliable informant along with a phone check an a surveillance. I believe that the above named person is selling and storing large quantities of heroin from inside of his apartment.

In a subsequent search of appellant's apartment, on a couch within two feet of his bed, the officers found twenty-five packets of heroin.

Appellant contends that there was insufficient probable cause to support the issuance of a warrant because the information provided to the issuing authority was too dated or "stale." He places reliance upon such cases as *Commonwealth v. Simmons,* 450 Pa. 624, 301 A.2d 819 (1973) and *Commonwealth v. Shaw,* 444 Pa. 110, 281 A.2d 897 (1971), to support his arguments. However, we do not find these precedents to be apposite to the circumstances here present. In both of these cases, the prior observations were of *possessions* of narcotics only, and did not suggest the *ongoing* nature of a *sales* operation as was evident in the instant case.

We must be mindful that the courts are not to take an overly technical approach to the evaluation of the information supplied to the magistrate in a search warrant application. As the United States Supreme Court stated in *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965):

"If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." [Emphasis supplied]

The probable cause standard concerns only the probabilities, and not a prima facie showing of criminal activities, and probable cause exists when the facts and circumstances set forth in the affidavit are sufficient to warrant a man of reasonable caution in the belief that contraband to be seized is in the specific place covered in the application. *Commonwealth v. Frye,* 242 Pa.Super. 144, 363 A.2d 1201 (1976). A determination of probable cause by the issuing authority is

entitled to great deference by the reviewing court because searches pursuant to warrants are preferred and to be encouraged. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Jones v. United States,* 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ In the instant case, there was ample information to provide probable cause. Using a common sense approach, as we are required to do, we find that the magistrate was advised that a very reliable police informant stated that the appellant was a drug salesman. In the ten days prior to the date of the affidavit, the informant saw the appellant, at his apartment, in the possession of ten bundles of heroin, and was told these would be sold to another person for $800.00. On another occasion, the informant had seen appellant depart from his apartment with a quantity of drugs to sell to two other people in a bar. Especially noteworthy was the informant's information that customers "always" telephoned before they visited to purchase drugs. The telephone number provided to police, as related to the magistrate, was assigned to the same individual who was the reputed salesmen. Common sense would dictate the conclusion that the appellant was probably a heroin salesman, that his apartment was the site of his drug business, and that he recently had drugs stored there which he sold to customers, on a continuing basis, after telephone discussions with them. There was clearly probable cause established for the issuance of a search warrant in this case.

■ The appellant's second contention, that there was insufficient evidence of his possession of drugs seized, is totally devoid of merit. Quite simply, a sizeable quantity of drugs was located on a couch only two feet from a mattress where the appellant slept. The apartment itself had a telephone registered to appellant and a utility bill was found for the premises, bearing the appellant's name. Appellant had his clothing in the apartment, and after being arrested, appellant put on shoes and socks lying next to the mattress beside which the drugs were found. Appellant's control of the premises, and his constructive possession of the drugs

found there, was clearly sufficient to sustain the conviction. See *Commonwealth v. DeCampli,* 243 Pa.Super. 69, 364 A.2d 454 (1976), and cases cited therein.

Affirmed.

CERCONE, J., files a concurring opinion. SPAETH, J., files a dissenting opinion. WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

CERCONE, Judge, concurring:

The transactions of the defendant as described by the informant indicated a continuous course of conduct by defendant up to the time of the issuance of the warrant. There was sufficient evidence here to justify the search. *Commonwealth v. Simmons,* 450 Pa. 624, 301 A.2d 819 (1973); *Commonwealth v. Eazer,* 455 Pa. 320, 312 A.2d 398 (1973).

SPAETH, Judge, dissenting:

In challenging the search warrant appellant does not contend that the informant was unreliable; rather, he contends that if all of the statements in the application for the warrant are taken as true, still they do not amount to a showing of probable cause to believe that contraband would be found at his residence at the time that the warrant was issued. The rule to be applied in appraising this contention was stated in *Commonwealth v. Shaw,* 444 Pa. 110, 113–14, 281 A.2d 897, 899 (1971), where the Supreme Court said:

In order for the issuance of a search warrant to be constitutionally valid, the issuing officer must reach the conclusion that probable cause exists at the time he issues the warrant. Such a decision may not be made arbitrarily and must be based on facts which are closely related in time to the date the warrant is issued. *Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932); *Durham v. United States,* 403 F.2d 190 (9th Cir. 1968);

*Schoeneman v. United States,* 115 U.S.App.D.C. 110, 317 F.2d 173 (1963); and *Dandrea v. United States,* 7 F.2d 861 (8th Cir. 1925). See also IV Wharton Criminal Law and Procedure § 1546 (12th ed. 1957), and authorities cited in 100 A.L.R.2d 525 (1965). If the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, unless it is also shown that the criminal activity continued up to or about that time.

Here, the warrant was issued on the basis of the following information:

I policeman # 4334 having received information from a reliable informant 2–19–76 that he was inside of the above location in the past 10 days and did see the above named person have in his possession approximately 10 bundles of alleged heroin which he stated to the informant was for one person named Roy who was coming over in half an hour to buy the stuff for $800.00. This informant stated that there were approximately five other persons in this apartment and that he would not be sure who to blame if it link out to the cops about this certain transaction. The informant also stated that he on another date seen the above named person called (Brother Rob) leave this apartment with three bundles of heroin on his possession and was going to the bar to sell them to two different persons. This informant also stated that this person phone number is 3498533 and that before any of the above customers come over they always call. This informant in the past two years has given me information which has resulted in a number of arrests with evidence confiscated on all arrests. A check with the phone company of the number supplied to me by this informant was made and found it to be in the name of the above living at the above location. On 2–23–76 from approximately 11:20 a. m. to 11:50 a. m. a surveillance was conducted at the above location and two persons were seen entering and having this location after staying only a short period of time, one of the

persons being a white male. Due to the information received from this reliable informant along with a phone check an a surveillance. I believe that the above named person is selling and storing large quantities of heroin from inside of his apartment.

Upon reading this statement in a common sense manner, *Rosencranz v. United States,* 356 F.2d 310, 314 (1st Cir. 1966); *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), one will see that it says at least this much (it says something more, which will be discussed in a moment): Sometime within the 10 days preceding the statement (14 days by the time the warrant was issued), the informant was in appellant's apartment and saw 10 bundles of heroin in appellant's possession, and appellant told the informant that he intended to sell these bundles to "Roy" within half an hour. On some other occasion the informant saw appellant with three bundles of heroin and appellant told the informant he intended to sell these bundles to two men at a bar. It is plain that the issuing authority could regard this as "evidence of criminal activity at some prior time." *Commonwealth v. Shaw, supra.* It is equally plain, however, that the statement "will not support a finding of probable cause as of the date the warrant issue[d], unless it [was] also shown that the criminal activity continued up to or about that time." *Id.* The question we must decide, therefore, is: Was it thus also shown?

Since there was no statement of the date of the second occasion—the one involving the three bundles—"[a]ny selection of time on our part would be clearly conjectural. So too must have been the magistrate's determination." *Commonwealth v. Simmons,* 450 Pa. 624, 630, 301 A.2d 819, 822 (1973). Therefore, the second occasion cannot be said to have been "closely related in time to the date the warrant was issued," *Commonwealth v. Shaw, supra,* 444 Pa. at 113, 281 A.2d at 899, so as to establish probable cause. In regard to the first occasion—the one that was "in the past ten

days"—we explained in *Commonwealth v. Novak,* 233 Pa.Super. 236, 238–9, 335 A.2d 773, 774 (1975), that

> [g]enerally when the courts are forced to make an assumption as to when transactions occurred "within" a given period, for purposes of determining probable cause, it must be assumed that the transactions took place in the most remote part of the given period. See 100 A.L.R.2d 532. The reason for this policy is obvious. If this were not the construction given to this phrase, stale information could be made to appear current by the mere use of "within" language.

Therefore, the "evidence of criminal activity at some prior time" amounts only to evidence of one sale 14 days before the warrant issued, and of one other sale at some other, unknown, time. Thus, so far I have been unable to find any evidence in the application for the warrant from which it was "shown that the criminal activity continued up to or about [the] time [the warrant issued]." *Commonwealth v. Shaw, supra.*

In addition to telling about the two sales, the informant said that "before any of the above customers come over they always call." (Presumably this was told to the informant by appellant.) Initially, this might seem to suggest criminal activity continued up to the time of the warrant, but even after the most liberal reading, it will be seen that this is not the case. The "they" refers to the "above customers" and therefore only to "Roy" and the two men at the bar. (This is the most that may be said; the "they" may refer only to Roy, for it is not said that the two men ever came to the apartment.) All we are told—and all the issuing authority was told—about *how often* or *when* these men "c[a]me over," is that on one occasion "in the past 10 days" one of them, Roy, did, and that on another occasion, at an undetermined time, the other two did not come over but did buy heroin in a bar outside the apartment. The fact—as we assume it to be—that before either of these transactions, the buyer telephoned appellant adds nothing so far as showing

that criminal activity continued up to the time of the warrant. Nor does the word "always" help, for no information is supplied by which any content may be given to the word. How many prior incidents does it refer to? And when did these occur? The application of "common sense usage" will not answer these questions, for by such usage, "always" may refer to very few, and very old, prior incidents. ("I hardly ever miss a day of work, but when I do, I always call and explain why.")

The correctness of this analysis is confirmed by the conduct of the police. They did not consider that after talking to the informant they had probable cause to believe that the criminal activity described by the informant still continued; to learn whether it did, they initiated a surveillance. This was good practice, for it is clear that an informant's tip in itself insufficient to establish probable cause may become sufficient when corroborated by independent observation. See *Commonwealth v. Monte,* 459 Pa. 495, 329 A.2d 836 (1974). Here, however, the application for the warrant reveals that the surveillance was too brief to provide corroboration. On February 23, from about 11:20 to 11:50 a. m., the police watched appellant's apartment building and saw two persons "entering" the building and, after "a short period," leave. The application does not identify or describe these persons in any way beyond saying that one was a "white male." It does not say whether they came separately or together. It does not say how long the "short period" was. (Did they stay half an hour, or, finding no one inside, leave?) Most important, it does not say what is meant by "entering" the building. Did they go to appellant's apartment, or to the third floor apartment?

Thus the conclusion is inescapable that the requirement of *Commonwealth v. Shaw, supra,* that there be evidence of "criminal activity continued up to or about [the] time" the warrant issued, was not satisfied. An examination of other cases confirms this conclusion. In *Commonwealth v. Bove,*

221 Pa.Super. 345, 293 A.2d 67 (1972), this court suppressed the fruits of a warrant "based on an alleged illegal activity [drug sales] that occurred more than one month prior to the issuance of the warrant, and where there was no evidence of continued illegal activity in the interim." *Id.*, 221 Pa.Super. at 352, 293 A.2d at 70. This was so although the warrant alleged, in addition to the sales themselves, that the defendant kept a *supply* of contraband in a safe in his bedroom and in other parts of his house. In *Commonwealth v. Novak,* 233 Pa.Super. 236, 241, 335 A.2d 773, 776 (1975), this court construed a statement that the informant had purchased drugs from the defendant more than one dozen times within the last two months, as information that was seven weeks old, and held the information to be stale, particularly because it involved items "of such a nature that they would likely be quickly disposed of." Finally, in *Commonwealth v. Hagen,* 240 Pa.Super. 444, 368 A.2d 318 (1976), this court reversed a conviction where the information in regard to sales was a month and a half old, and the defendant had moved to a different apartment in the same building. (The warrant did not establish continuity because there were no underlying circumstances to support the allegation that at the time of its issuance, the expected big shipment of drugs had arrived.)

It will be observed from the cases that the amount of acceptable delay will vary, both with the nature of the contraband and with the nature of the evidence of continued criminal activity. If the contraband is of a sort not easily disposed of, the evidence of continued criminal activity may be weaker, and the amount of delay longer; but where the contraband is easily disposed of, the evidence of continued criminal activity must be stronger, and the amount of delay shorter. Here, the contraband was easily disposed of, and there was substantially no evidence of continued criminal activity. Thus, while the amount of delay was somewhat shorter than in some of the cases, it was nevertheless unacceptably long.

Accordingly, the evidence seized in the search pursuant to the warrant was inadmissible. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

I should reverse and remand for a new trial.