## Commonwealth v. D'Angelo, Appellant.

Argued December 10, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*David Rudovsky,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Joseph J. Musto,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District At-

torney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 20, 1969:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was convicted of aggravated robbery. This appeal, which attacks the prosecuting witness' identification, follows:

At trial, the prosecuting witness testified that he was held up at gunpoint in his grocery store at which time he faced the robber for one or two minutes. Fifteen minutes later, the prosecuting witness notified the police of the robbery and told them that the robber "weighed about 155 pounds, wore a black leather jacket, a white sweater, turtle neck, he had sun glasses and I said his hair was sort of blondish, very dark blonde hair," and that he was "about five foot six."

Two weeks after this incident the prosecuting witness came to a police station to observe a lineup wherein he identified appellant as the robber.

The actual participants in the lineup were described at trial by a member of the Defender Association who represented appellant at the lineup. In his testimony, which was never contradicted or challenged, he stated that the police assembled five men, including appellant, all of whom were stripped to the waist. Three men (who were in fact police officers) wore regulation dark blue police trousers, with stripes running down the outside of each pants leg. In addition, one officer weighed 185 pounds and was five feet, ten inches tall, four and one half inches taller than appellant. His hair was cut extremely short "of the military cut variety." The second officer present in the lineup weighed 152 pounds and was five feet, nine

inches tall, three and one half inches taller than appellant. "He had what I call a press haircut. If I can describe it for the record, Your Honor, is where a male wears his hair draped over his forehead coming from the part over to the side, a very obvious type of haircut." The third officer in the lineup weighed 230 pounds and was six feet tall, six and one half inches taller than appellant. He had an extremely short haircut. The fourth person in the lineup was 18 years of age, weighed 140 pounds and was five feet nine and one half inches tall, four inches taller than appellant. He was "wearing a press haircut," and had on "blue jeans and desert boots."

None of these four men was "wearing mustaches or had any recent growth on their faces."

In contrast to their appearance, appellant at the time of the lineup wore black pants, weighed 160 pounds, was five feet, five and one half inches tall and had a mustache. "It was quite bushy and quite noticeable. Even looking at his face now you can see the outer limits of his moustache. It came all the way around here. It was absolutely long." His hair was long and sandy colored.

Upon observing the prospective participants in the lineup, the lawyer from the Defender Association requested the officer in charge to have all of the people in the lineup dressed in civilian clothes and shoes. This request was specifically denied. He also requested permission that appellant be allowed to remove his mustache "to make the lineup as fair as possible." This request was also specifically denied.

The lineup was conducted immediately thereafter. During the proceedings, the officer in charge instructed the lineup participants to step in various directions and assume certain positions. According to the testimony of the Defender, appellant and the 18 year old

civilian responded "less quickly than the police officers (in the lineup), noticeably less quickly to these orders. Three was obviously trained in military maneuvers, two weren't. If you lined them up and asked them to perform that you would notice the difference."

After the lineup was completed, the complaining witness identified appellant. This identification, however, is of dubious value.

No other person in the lineup even reasonably resembled appellant. He was the only participant who had long, sandy hair and a mustache. It was also apparent to an observer, that three of the lineup participants were wearing regulation police trousers with distinguishing stripes.

Moreover, prior to viewing the lineup, the prosecuting witness had a conversation with the police officer in charge. The prosecuting witness testified that from this conversation he inferred that "one of the men of those five (in the lineup) must have been the man" who robbed the store. At the completion of the lineup, he identified the appellant, stating at the time, "it's the same one, he had a mustache, it's the same build, *there is nobody in there but him,* that's the guy. If he had a pair of sunglasses I would be sure." (Emphasis added)

Thus the suggestiveness of the lineup taken together with the belief of the prosecuting witness that one of the men in the lineup must have been the robber, led to the virtually inevitable identification of the appellant as the robber.

This procedure is proscribed by *United States v. Wade,* 388 U.S. 218 (1967).

In *Wade* the Supreme Court stated that an improperly suggestive lineup resulting in an identification deprives the accused of his "basic right to a fair trial."

In language directly applicable to this case, the court stated that the lineup must be scrutinized in order to "analyze whether potential substantial prejudice to defendant's rights" was inherent "in the particular confrontation. . . . Instances of [improperly] suggestive procedures, for example, [are where] . . . all in the lineup but the suspect were known to the identifying witness, . . . the other participants in a lineup were grossly dissimilar in appearance to the suspect, [or if] . . . the witness is told by the police that they have caught the culprit after which the defendant is brought before the witness alone is viewed."

Appellant's trial was conducted five months after the two minute robbery incident occurred. During the trial, the complaining witness again identified appellant as the robber. But the Commonwealth did not demonstrate that this in-court identification was independent of the lineup identification. Thus, under *Wade*, this in-court identification must also be proscribed as being the product of a corrupted lineup.

I would reverse the judgment of sentence below and order a new trial.

SPAULDING, J., joins in this dissenting opinion.