378 A.2d 1015

COMMONWEALTH of Pennsylvania

v.

Peter SMITH, Appellant.

Superior Court of Pennsylvania.

Argued June 13, 1977.

Decided Oct. 6, 1977.

Arthur L. Goldberg, Harrisburg, for appellant.

John M. Eakin, Mechanicsburg, with him Kevin A. Hess, Deputy District Attorney, Carlisle, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On April 21, 1976, an indictment was returned by the Grand Jury of Cumberland County charging appellant, in one count, of engaging in pool selling and bookmaking, and in eight counts, of permitting pool selling and bookmaking upon premises owned or occupied by him. Appellant filed a motion to suppress evidence seized pursuant to a search warrant. The motion was denied, and on May 11, 1976, appellant was found guilty by a jury on all eight counts of permitting pool selling and bookmaking, but was acquitted on the one count of engaging in pool selling and bookmaking. Post-trial motions in arrest of judgment and for a new trial were filed and denied, and on November 29, 1976, appellant was sentenced on each of the eight counts to pay a fine of $2,000 and to serve a term in prison of two and one-half years to five years, the sentences to run concurrently. This appeal followed.

I

■ Appellant argues that his motion in arrest of judgment should have been granted because the evidence was insufficient to prove beyond a reasonable doubt that he had knowledge that gambling activities were taking place on his premises.

Section 5514 of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, provides in pertinent part that:

A person is guilty of a misdemeanor of the first degree if he:

.     .     .     .     .

(5) being the owner, lessee, or occupant of any premises, knowingly permits or suffers the same, to be used or occupied for any [pool selling or bookmaking purposes].

There is no dispute that the evidence established that appellant owned the premises where the gambling paraphernalia was found and the telephone over which bets were being taken was located. Regarding the evidence that appellant had knowingly permitted the premises to be used in this manner, the lower court said:

[Appellant's knowledge] was established almost entirely by circumstantial evidence. It consisted of evidence that [appellant's] wife and another relative were identified as the persons the affiant spoke to when he placed bets. The activity was shown to be continuing in nature. The bail piece executed by [appellant] . . . and the testimony of [appellant's] son showed [appellant] resided on the property. In addition the bail piece and the testimony of the County Recorder of Deeds established [appellant] as the sole owner of the property. Finally, the letter addressed to [appellant] and found in the room where the illegal activity was carried on among the bookmaking records would strongly indicate that he had been in the room while it was being put to its unlawful use.

Slip opinion at 9–10.

The only direct evidence of appellant's knowledge was the testimony of Trooper Wynn that on one of the occasions when he called the telephone located in appellant's premises to place a bet the person answering said, "This is Pete". N.T. at 12.

> In testing the sufficiency of the evidence, we must review the testimony in a light most favorable to the verdict winner. . . . In so doing, we will accept as true the Commonwealth's evidence and all reasonable inferences arising therefrom. . . . The test of the sufficiency of the evidence is whether, accepting as true all evidence, regardless of whether it is direct or circumstantial, upon which, if believed, the fact finder could properly have based his verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. . . .

> Commonwealth v. Young, 233 Pa.Super. 429, 432, 335 A.2d 498, 500 (1975) (citations omitted).

Reviewing the testimony in this light, we conclude that the jury could reasonably infer that appellant knew that illegal gambling activities were being conducted on his premises. The lower court therefore properly denied appellant's motion in arrest of judgment.

## II

Appellant first argues that he is entitled to a new trial because hearsay testimony was improperly admitted over repeated objection. The testimony concerned statements by a Robert Long to Trooper Wynn to the effect that by calling a specific telephone number, the trooper could place bets. N.T. at 6–8. As the lower court correctly held, this testimony was not hearsay because it was not offered to show that what Long said was true but only to show that he said it, Commonwealth v. Sampson, 454 Pa. 215, 311 A.2d 624 (1973); Commonwealth v. Jacobs, 445 Pa. 364, 284 A.2d 717 (1971), thereby explaining the trooper's subsequent action,

*Commonwealth v. Tselepis,* 198 Pa.Super. 449, 452, 181 A.2d 710, 712 (1962).

■ Appellant next argues that he is entitled to a new trial because his motion to suppress was improperly denied. Appellant specifically alleges that material misrepresentations contained in the affidavit in support of the warrant prevented the issuing authority from making an objective and detached determination that probable cause existed as required by the Fourth Amendment of the United States Constitution made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

In the affidavit the affiant states that he "became acquainted with Pete, John & Blanch [*sic*] SMITH through Robert Harry LONG,"[1] and that he "personally was involved in playing football tickets with Pete & John SMITH through Robert Harry LONG." The ordinary interpretation of these words is that on Long's introduction the affiant met Pete, John, and Blanche Smith face-to-face. However, at the suppression hearing the affiant testified that he never met appellant, N.T. at 13, and that these averments of personal "acquaint[ance]" were based on what Robert Long had told him, N.T. at 8–11.

Given this testimony, our decision is controlled by *Commonwealth v. D'Angelo,* 437 Pa. 331, 263 A.2d 441 (1970). There the facts were these. After viewing a line-up, the victim of a robbery told the police that he was not sure whether D'Angelo was the robber. The next day the police obtained a warrant to search D'Angelo's residence, stating in the affidavit of probable cause that D'Angelo had been "identified" as the robber but that the victim "would not say positively that D'Angelo was the person unless he could view the clothing that was worn by the robber." Pursuant to the

---

1. John and Blanche Smith are respectively appellant's nephew and wife; they were tried in separate proceedings.

warrant the police seized a white turtleneck sweater. Upon being shown the sweater the victim for the first time told the police that D'Angelo was the robber. This court affirmed *per curiam,* HOFFMAN, J., filing a dissenting opinion in which SPAULDING, J., joined. The Supreme Court granted allocatur and reversed. Said the Court:

> It is clear from the record that the affidavit filed with the magistrate which caused the search warrant to issue was incorrect and misleading when it stated, "D'Angelo has been *identified* as the person who entered Fines [*sic*] store . . .", for the Commonwealth's own evidence establishes that as of that moment this was not the case. . . This, in our view, so tainted the search that the evidentiary use of the fruits thereof violated due process of law and, in itself, requires a reversal of the conviction and judgment.

*Id.* 437 Pa. at 336, 263 A.2d at 444.

Furthermore, the Court explained, this disposition was required even though

> the information supplied the magistrate in the affidavit, when considered in its entirety, was unquestionably sufficient to warrant a reasonable man in the conclusion that probable cause existed to issue the search warrant. But, this information was untrue and misleading in one very important respect. Moreover, the testimony at trial supports no other conclusion but that the police who supplied the information knew it was not in accord with the then existing facts. Under such circumstances, the warrant was invalid and the use of evidence resulting from the search based thereon was constitutionally proscribed. . .
> To rule otherwise would permit the police in every case to exaggerate or to expand on the facts given to the magistrate merely for the purpose of meeting the probable cause requirement, thus precluding a detached and objective determination.

*Id.* 437 Pa. at 337–38, 263 A.2d at 444.

So here, the affidavit was untrue and misleading, and known to be so, in important respects.[2] It thus precluded a detached and objective determination of probable cause.

The judgment of sentence is vacated and the case is remanded for a new trial.

PRICE, J., did not participate in the consideration or disposition of this case.

WATKINS, President Judge, and VAN der VOORT, J., dissent.

2. There were other misleading statements in addition to those discussed above. The affidavit stated that "[t]he person(s) taking the bets identified themselves as being Pete SMITH, Blanch[sic] SMITH, & John SMITH." At the suppression hearing the affiant testified that in fact no surnames were used. N.T. at 8. In the affidavit the affiant stated that he "positively identified the voices of John & Pete SMITH as being the person(s) that accepted the horse bets on the telephone." At the suppression hearing the affiant testified that he could not have positively identified appellant's voice except for the salutation, "This is Pete." N.T. at 14. Finally, in the affidavit the affiant stated that he believed the information Robert Long gave him in part because "he is incriminating himself by indicating that Pete SMITH is the person running the gambling operation." However, at the suppression hearing the affiant testified that Long was not an informant and was unaware that the affiant was a police officer. N.T. 11, 26.