J-S27038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOEWEL JOHN KEITA | : | |
| | : | |
| Appellant | : | No. 1432 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 30, 2022
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0000038-2021

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED:  DECEMBER 28, 2023**

Joewel John Keita ("Keita") appeals from the judgment of sentence entered following his jury convictions for first-degree murder, attempted first-degree murder, and related offenses.[1]  After careful review, we affirm.

The trial court delineated the underlying facts and procedural history:

Leo Larios ["Mr. Larios"] and Albert Pena-Pena ["Mr. Pena-Pena"] were in the . . . City of Reading, Berks County, Pennsylvania. . . . Mr. Larios noticed two people walking toward them on Church Street.  One person was walking in the street, and the other person was walking on the sidewalk.  Mr. Larios described the man on the sidewalk as Black and stocky, . . . wearing glasses and a hoodie, and . . . had a face covering from his nose to his chin. . . . [T]he person in the street was wearing a hoodie, sweatpants, reflective shoes, and [a] ski mask. Mr. Larios . . . recognized the man on the sidewalk as [Keita], but . . . he did not initially tell that to any police officers because he did not want to be labeled as a snitch.

---

[1] **See** 18 Pa.C.S.A. §§ 2502(a) and 901(a).

. . . Mr. Larios got into the driver's seat [of his car] and Mr. Pena-Pena got into the passenger's seat. As Mr. Larios was pulling out of the parking space, he heard shots fired from behind them. Mr. Larios was shot twice in the back of the head. . . . Mr. Pena-Pena was also shot in the head and died [because] of his injuries.

Mr. Larios [had previously] encountered [Keita] . . . on the streets and [] the two of them had exchanged messages on Facebook. Criminal Investigator ["Investigator"] Daniel Cedeno of the Reading Police Department presented two photo lineups to Mr. Larios. Mr. Larios . . . recognized Devon Starr [Keita's co-defendant, "Starr"] in the lineup . . . as someone he knew, but [] he did not see [Starr] . . . on the night of the shooting. Mr. Larios . . . recognized [Keita] in the lineup . . . as the man who walked past him on the sidewalk on the night of the shooting. . . .

Mr. Larios . . . grew up with [Starr] and [] helped [] Starr file for Pandemic Unemployment Assistance. [Mr. Larios and Starr exchanged] Facebook messages [in which] . . . Starr complained multiple times about how long it was taking for him to get the money, accused Mr. Larios of stealing the money, and threatened Mr. Larios.

Trial Court Opinion, 12/5/22, at 1-2 (record citations omitted).

The police investigation uncovered evidence, in the form of a recorded telephone call between Starr's incarcerated brother and Keita, discussing the shooting. *See id*. at 3-4. The police obtained video surveillance footage recorded on the night of the shooting which showed Starr and Keita, who had a gun on his hip, in proximity to the shooting. *See id*. at 4.

Keita filed multiple motions to suppress the out-of-court identification by Mr. Larios and asserting the affidavits of probable cause in both the arrest and search warrant allegedly contained material misrepresentations. Mr.

Larios and Investigator Cedeno testified at the suppression hearing about Mr. Larios's identification of Keita from a photo array. *See* N.T., 7/20/21, at 10-72, 90-108.

Mr. Larios testified he knew Keita from around the neighborhood and from Facebook. *See id*. at 14-15, 40-45. Mr. Larios noted Keita had a memorable, "squeaky" voice which was "unique to that one person." *Id*. at 14. Mr. Larios stated the man who walked by him on the sidewalk immediately prior to the shooting spoke to him and he recognized Keita's voice. *See id*. at 10, 13-15.

Mr. Larios explained Investigator Cedeno showed him two photo arrays. *See id*. at 21-29. He recognized Starr's picture in the first photo array but did so because he had known Starr for many years, not because he recognized him from the night of the shooting. *See id*. at 21-22. Mr. Larios identified Keita in the second photo array as the man on the sidewalk. *See id*. at 25. Mr. Larios circled Keita's photo in the array and signed and dated it. *See id*. at 26-27. Mr. Larios viewed the photo array within forty hours of the shooting and was frightened. *See id*. at 26-28. Because of this, when he identified Keita, he told Investigator Cedeno he "felt like" Keita was the man on the sidewalk. *See id*. at 28. Mr. Larios clarified, to him, "felt like" was the same as saying "I knew that it was [Keita]." *Id*. at 28-29. Mr. Larios averred

Investigator Cedeno did nothing to influence his selection of Keita from the photo array. *See id*. at 21-23, 25, 70.

Investigator Cedeno also testified at the suppression hearing and confirmed Mr. Larios recognized photographs in the first array but not from the evening of the shooting. *See id*. at 90. Investigator Cedeno noted he gave Mr. Larios the same instructions before looking at each photo array, telling Mr. Larios to let Investigator Cedeno know if he recognized anyone in the photographs as being connected to the shooting. *See id*. at 92-93. Investigator Cedeno did not point to any specific person in the photo array, did not tell Mr. Larios he had to identify anyone, did not tell Mr. Larios a photograph of a suspect was included in the array, and did not suggest to Mr. Larios where the photo of Keita was in the array. *See id*. at 93-94. Investigator Cedena acknowledged telling Mr. Larios, "to do the right thing if he recognizes somebody in [the photo array] from this incident." *Id*. at 101.

A jury found Keita guilty of the offenses enumerated above. The trial court sentenced Keita to life in prison without the possibility of parole, followed by twenty to forty years of incarceration. Keita filed a timely post-sentence motion, which the trial court denied. Keita then filed a timely appeal.[2]

Keita raises the following issue for our review:

---

[2] Keita and the trial court complied with Pa.R.A.P. 1925.

Whether the [t]rial [c]ourt erred in denying [Keita's] [o]mnibus [p]retrial [m]otion to [s]uppress [i]dentification and to [s]uppress [p]hysical [e]vidence?

Keita's Brief at 7.

Keita challenges the denial of his motions to suppress. *See* Keita's Brief at 22-24. When reviewing an order denying a motion to suppress evidence,

[o]ur standard of review . . . is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this [C]ourt may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record[,] which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v . Gindraw*, 297 A.3d 848, 851 (Pa. Super. 2023) (citation omitted).

We first consider Keita's argument that Investigator Cedeno pressured Mr. Larios to identify Keita from the photo array. Keita states:

During the photo lineup, [Mr.] Larios did not identify [Keita] as the person who walked by him on the sidewalk of Church Street, but [Investigator] Cedeno urged [Mr.] Larios to "do the right thing." [Mr.] Larios then picked out [Keita], not as the suspect in the shooting, but merely as a person he knew from the neighborhood. [Investigator] Cedeno instructed [Mr.] Larios to circle the picture of [Keita] and place his initials next to the photo.

Keita's Brief at 23.

In considering whether Keita's argument merits relief, we note:

Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined

- 5 -

from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. ***Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.***

***Commonwealth v. Bishop***, 266 A.3d 56, 63 (Pa. Super. 2021) (citation omitted). "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." ***Commonwealth v. Jaynes***, 135 A.3d 606, 610 (Pa. Super. 2016) (citations and quotation marks omitted).

Keita waived this argument. It is well-settled "the failure to raise a suppression issue prior to trial precludes its litigation for the first time at trial, in post-trial motions or on appeal." ***Commonwealth v. Douglass***, 701 A.2d 1376, 1378 (Pa. Super. 1997) (citation omitted). Moreover, we have held, "appellate review of [a ruling on] suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." ***Commonwealth v. Little***, 903 A.2d 1269, 1272–73 (Pa. Super. 2006) (citation omitted); ***see also Commonwealth v. Thur***, 906 A.2d 552, 566 (Pa. Super. 2006) (stating the same).

Keita did not argue in either his motion to suppress or at the suppression hearing that Investigator Cedeno's statement to Mr. Larios about doing the

- 6 -

right thing tainted the identification. ***See*** Motion to Suppress Identification, 2/16/21, at 1-2 (unnumbered); N.T., 7/20/21, at 205-06. Keita mentioned Investigator Cedeno's statement for the first time in his post-hearing brief in support of suppression, but did not raise it as a specific basis for seeking suppression. ***See*** Brief in Support of Motion to Suppress, 9/13/21, at 12 ("After not picking out anyone from the photo array, [Investigator] Cedeno prodded [Mr.] Larios 'to do the right thing.'") and 14 (Mr. Larios did not identify Keita until "[Investigator] Cedeno[] pressure[d Mr.] Larios 'to do the right thing[.]'"). Thus, the trial court did not address this claim in its decision denying Keita's motion to suppress. ***See*** Trial Court Opinion, 11/30/21, at 9-10.

Moreover, in his Rule 1925(b) statement, Keita did not raise this argument, instead asking, "whether the trial court erred in denying [Keita's] omnibus pretrial motion to suppress identification and to suppress phyiscal evidence[.]" Concise Statement of [Errors] Complained of On Appeal, 10/31/22, at 1 (capitalization omitted, unnumbered). "[T]he Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that ***the trial court judge may be able to identify the issues to be raised on appeal***[.]" ***Commonwealth v. Vurimindi***, 200 A.3d 1031, 1038 (Pa. Super. 2018) (emphasis added). Here, Keita raised a boilerplate challenge to the denial of his motion to suppress. There was no way for the trial court to

determine from Keita's generic claim he was challenging the identification as unreliable because of Investigator Cedeno's statement. Thus, the trial court did not address the argument in its Rule 1925(a) opinion. **See** Trial Court Opinion, 12/5/22, at 1-8. Because Keita failed to properly preserve this argument, it is waived.[3] ***Vurimindi***, 200 A.3d at 1038.

---

[3] Moreover, it would not merit relief. Keita's claim Mr. Larios did not identify Keita as the man on the sidewalk at the time of the shooting but only as a man Mr. Larios knew from the neighborhood is a misstatement of the record. **See** Brief in Support of Motion to Suppress, 9/13/21, at 12-14; Keita's Brief at 23. The record reflects Mr. Larios recognized ***Starr's*** photo in the first photo array because he knew Starr from the neighborhood but did not see him at the scene of the shooting. **See** N.T., 7/20/21, at 21-24. Mr. Larios testified the man on the sidewalk prior to the shooting spoke to him and he recognized Keita's distinctive squeaky voice because he knew him from the neighborhood. **See id**. at 14-15. Thus, he identified Keita from his photo as the man on the sidewalk from the shooting. **See id**. at 24-27.

Further, Keita's contention Mr. Larios was either unable to identify him from the photo array or was unwilling to make the identification until "prodded" by Investigator Cedeno is a mischaracterization of the record. **See** Brief in Support of Motion to Suppress, 9/13/21, at 12-14; Keita's Brief at 23. During the suppression hearing, Keita did not question Mr. Larios regarding Investigator Cedeno's statement, thus there is nothing of record supporting any contention Mr. Larios felt "prodded" or pressured by Investigator Cedeno's statement or that it contributed to his identification. **See** N.T., 7/20/21, at 25-26, 40-75.

Investigator Cedeno did not testify Mr. Larios was unable to make an identification and then did so after being urged to "do the right thing." **See id**. at 92-93, 100-01. Rather in his brief testimony regarding the statement, Investigator Cedeno explained Mr. Larios had begun to look at the pictures from the second photo array when Investigator Cedeno made the statement. **See id**. at 100-01.

*(Footnote Continued Next Page)*

- 8 -

Keita also argues the identification by Mr. Larios should be suppressed because the search warrant and arrest warrant contained "material misrepresentation[s]." Keita's Brief at 23. Namely, the affidavit of probable cause attached to the arrest warrant stated, "[Mr.] Larios positively identified [Keita] as the male who walked past him on the sidewalk with the hooded sweatshirt." Application for Arrest Warrant, Affidavit of Probable Cause, date unreadable, at 5 (unnumbered). The search warrant stated, "Leo Larios identified [] Keita as the male who walked past him on the sidewalk just prior to the shooting." Application for Search Warrant, Affidavit of Probable Cause, 8/26/20, at 2. Keita maintains these were material misrepresentations because Mr. Larios did not make a positive identification but rather stated he "felt like" Keita was the man on sidewalk. *See* Keita's Brief at 24.

Keita relies on the Pennsylvania Supreme Court's decision in ***Commonwealth v. D'Angelo***, 263 A.2d 441 (Pa. 1970). Keita argues the ***D'Angelo*** Court held, "warrants that contain material misrepresentations by police must be invalidated and any evidence that ultimately flows from them

---

Keita has not shown the "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." ***Bishop***, 266 A.3d at 63. Nor has he shown that, "under the totality of the circumstances" the identification was unreliable. ***Jaynes***, 135 A.3d at 610. Thus, even if not waived, this argument would not merit relief.

are fruit of the poisonous tree which must be suppressed." Keita's Brief at 24; *see also D'Angelo*, 263 A.2d at 444.

In denying Keita's motion to suppress, the trial court rejected Keita's argument. It stated, "Defense counsel's argument [] Mr. Larios stated [] he 'felt like' it was [] Keita does not equate to a material misrepresentation of the identification of a suspect that led the Pennsylvania Supreme Court to invalidate a search warrant in [*D'Angelo*]." Trial Court Opinion, 11/30/21, at 10. We agree.

> To secure a valid search warrant,
>
> an affiant must provide a magistrate with information sufficient to persuade a reasonable person that there is probable cause for a search. The information must give the magistrate the opportunity to know and weigh the facts and to determine objectively whether there is a need to invade a person's privacy to enforce the law.

*Commonwealth v. Baker*, 24 A.3d 1006, 1017 (Pa. Super. 2011) (citations omitted). *See also Commonwealth v. Burno*, 154 A.3d 764, 781 (Pa. 2017) ("There is, of course, no doubt that the issuing authority must have probable cause to believe a suspect guilty of a crime charged against him before issuing a warrant for his arrest. This is ancient law and basic to our concept of freedom." (citations omitted)). Further, "misstatements of fact will invalidate a [] warrant and require suppression of the fruits of the search *only if the misstatements of fact are deliberate and material*." *Baker*, 24 A.3d at 1017 (emphasis in original). "The question of whether a misstatement

was deliberately made is to be answered by the lower court." *Id*. A fact is material if, without it, probable cause to search would not exist. *See id*. at 1018.

Following our review, we discern no error in the trial court's reasoning. In *D'Angelo*, after viewing a suggestive lineup, the victim said D'Angelo resembled the man who tried to rob him but could not make a positive identification. *See D'Angelo*, 263 A.2d at 442-43. Despite this, the police stated the victim had positively identified D'Angelo in their application for a search warrant. *Id*. at 443.

Our Supreme Court held the trial court erred in not granting D'Angelo's motion to suppress. *See id*. The Court stated:

> It is clear from the record that the affidavit filed with the magistrate which caused the search warrant to issue was incorrect and misleading when it stated [the victim made a positive identification], for the Commonwealths own evidence establishes that . . . this was not the case. . . . This . . . so tainted the search that the evidentiary use of the fruits thereof violated due process of law and, in itself, requires a reversal of the conviction and judgment.

*Id*.

Here, unlike in *D'Angelo*, Mr. Larios immediately and positively identified Keita's photo in a photo array which trial court found was not unduly suggestive. *See* Trial Court Opinion, 11/30/21, at 4-5, 10. Mr. Larios explained his use of the word "felt" was the same as saying "I knew that it was [Keita]." N.T., 7/20/21, at 28-29. Under these circumstances, the trial

court did not find the police statements in the affidavits of probable cause were material misrepresentations. Trial Court Opinion, 11/30/21, at 10. We have no basis to overturn this finding of fact, which is supported by the record. *See Baker*, 24 A.3d at 1018 (declining to overturn the trial court's finding-of-fact that, while the warrant contained a misstatement, the misstatement was not deliberate).

As none of Keita's arguments merit relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/28/2023