ARLENA GRACE *v.* STATE OF TENNESSEE.

*(Knoxville,* September Term (May Session) 1954.)

Opinion filed August 2, 1955.

THOMAS E. MITCHELL, of Johnson City, for plaintiff in error.

KNOX BIGHAM, Assistant Attorney General, for the State.

Mr. Special Justice Robert S. Clement delivered the opinion of the Court.

This is an appeal from a conviction of possessing intoxicating liquors with punishment fixed at a fine of $100 and confinement in the county jail for 20 days. The plaintiff in error has appealed and has assigned the following as error:

"The learned Trial Court erred in failing and refusing to sustain the motion of the defendant to exclude and suppress the testimony of the officers of any evidence obtained by them by reason of the fact that the search warrant was fatally defective, the affidavit giving the year as 54, and such date was an impossible date, and the warrant was, therefore, fatally defective. The learned Trial Court should have sustained this ground of the motion for a new trial, and it was error not to do so."

The brief facts are that on March 7, 1954, the home of the defendant Arlena Grace was raided by certain officers of Washington County. Approximately three pints of moonshine whiskey were found. The defendant was bound over to the Circuit Court and upon a trial of the case, the jury found the defendant guilty and assessed her punishment as stated above. The defendant did not take the stand. At the close of the State's proof the defendant entered a motion to exclude and suppress all evidence obtained by reason of the search because the affidavit stated that the information was obtained on the third month, the 7th day and the year 54. This motion

was overruled and the defendant has assigned this as error.

The search warrant was made an exhibit in this cause and we have had the privilege of examining same.

The part complained of in the warrant reads as follows:

"Affiant states he has information from A reliable citizen this date 3-7.54 that he saw for sale and store aquanity of intoxacating liquars at the above address this date 3.7.54" (Copied exactly as appears in warrant.)

From the foregoing it can be readily seen that the person who filled in the warrant certainly was not skilled in the art of typing nor spelling. In other parts of the warrant the word "civil" is spelled "cival" and the word "police" is spelled "polici." Yet such words as "head quarters" and "affiant" are spelled correctly. But as we look to the warrant as a whole, there is no doubt but that the affiant knew whose house he wanted to search, what he was looking for, and the day of the month, and the year in which the search was conducted. However, it can reasonably be argued that we cannot look to the warrant as a whole in establishing the date on which the information was obtained, therefore, we shall deal directly with that part of the warrant complained of which has been set out herein.

It must be conceded that if the figures 3.7.54 can not be interpreted as March 7, 1954, then the information was insufficient, and the search was illegal. *Welchance v. State,* 173 Tenn. 26, 114 S. W. (2d) 781. In this case the Court, speaking through the late Justice McKinney, said:

"It will be noted that affiant does not disclose the date on which he received the information, nor the date when his informant visited the dwelling of

plaintiff in error and drank some whisky." 173 Tenn. at page 27, 114 S. W. (2d) at page 781.

The Court further stated:

"In a case such as the one on trial, it is essential that the date on which the alleged offense was committed be stated in the affidavit in order that the magistrate may determine whether probable cause exists for the issuance of the warrant." 173 Tenn. at page 28, 114 S. W. (2d) at page 781.

Thus we come to the controlling point, and that is whether or not the figures "3.7.54" indicated to the magistrate issuing the search warrant to a sufficient degree of certainty, the date the affiant was on the premises and saw for sale and store a quantity of intoxicating liquor, was March 7, 1954. If this can be answered in the affirmative, then the information was sufficient, and the search was legal. If not, the search was illegal, and all evidence obtained by reason of said search should have been suppressed.

This particular point has not been ruled on by this Court insofar as we have been able to find, and neither the plaintiff in error nor the State has cited a Tennessee case.

■■ The using of figures and abbreviations to indicate dates of the day of the month, the month of the year, and the year, has become of universal custom. It is a matter of common knowledge that in business dealings with banks and other financial institutions, figures are thus used instead of writing out the name of the day, month, and year. The custom has been adopted to such an extent that modern typewriters have placed on the keyboard a slanting line (/) to be used in separating the figures or to denote the omission of the first two figures of the year.

In 1 Am. Jur., Abbreviations, Section 9, we find:

"Abbreviations formed by the shortening of words and by the use of numerals and the like are employed to express dates and periods of time. For instance, the designation of a year, in dating a paper, by the last two figures of its number, using a slanting line, or comma, or dash, to denote the omission of the first two figures, is entirely unambiguous, and to every one familiar with the usage of the language, it expresses the year as clearly as though it had been written out in full."

In our search for a case in point we have found the case *Estate of Lakemeyer,* 135 Cal. 28, 66 P. 961, involving the dating of a will. We quote at length from this case:

"The will is dated 'New York, Nov. 22,/97,' and, it is admitted, was wholly written and signed by the testator. The only question in the case is whether the words and figures quoted constitute a date, or, in other words, whether the will was *dated,* as required by the provisions of section 1277 of the Civil Code. This question, we think, must be determined in the affirmative. The object of writing is merely to express the thought or intention of the writer; and this may be as effectually done by abbreviations of words or other conventional signs, if commonly used and generally recognized, as by words fully written or spoken. Such abbreviations form, indeed, part of language, and do not differ essentially in their nature from words, which, like them, are themselves merely signs of thoughts. Hence 'the courts will determine the meaning of customary abbreviations of common words * * * without proof'; and especially, having regard to the present case, they will 'take judicial notice of abbreviations ordinarily used to designate

time, such as those for the month, forenoon, after-noon,' etc. 1 Am. & Eng. Ency. Law, 2d Ed., [pp.] 97-99. And under the head of abbreviations are to be included all conventional expressions or arbitrary signs that have passed into common use, such, for example, as punctuation marks, the arabic numerals, and other mathematical signs, and similar signs used by merchants, such as the dollar mark ($), the sign '%,' meaning 'per cent.,' 'c/o,' meaning 'care of,' etc. Abb. Law Dict. 'Abbreviations'; Webst. Dict., App.; 1 Am. & Eng. Ency. Law, 2d Ed., [p.] 98; People v. Empire G. & M. Co., 33 Cal. [171,] 174; Code Civ. Proc. § 186. This usage is referred to and impliedly accepted in the provision of the Code cited, where it is provided that 'such abbreviations as are in common use may be used, and numbers may be expressed by figures or numerals, in the customary manner,' which is to be understood, therefore, as simply applying to judicial proceedings a rule elsewhere universal. The rule is in fact but a deduction from the fundamental principle of interpretation, that contracts and wills are to be interpreted according to the intention of the party or parties. Civ Code, §§ 1317, 1636; Code Civ. Proc., § 1856; which equally applies to holographic wills as to others, Estate of *Stratton, 112 Cal. [513,] 516, 44 P. 1028;* Mitchell v. Donohue, 100 Cal. 202, 208-209, 34 P. 614.

"In this case the expression under consideration is entirely unambiguous and, to every one familiar with the usage of the language, it expresses the month, day, and year as clearly as though these had been written out in full. It is, or, rather, during the century just expired, it was, the common usage, universally understood, to designate the year by the last

two figures of its number, omitting the figures designating the century; and in writing, the same usage is observed, with the addition that sometimes a dash, or (as in Estate of Behrens, 130 Cal. 416, 62 P. 603) a comma, or (as in this case) a slanting line is used to denote the omission." 135 Cal. at pages 28-29-30, 66 P. at page 961.

In the record of the case at bar we could not help but notice that the Trial Judge, in signing his name to exhibit "A" the search warrant placed beside his name the following:

"11/4/54."

There is not a doubt in our minds about his meaning:

"The fourth day of November, Nineteen Hundred and Fifty Four, A. D."

We think the date set out in the affidavit must have been considered by the magistrate as March 7, 1954, and based upon this interpretation, the warrant was properly and lawfully issued, and the evidence obtained by reason of the search was properly admitted.

The judgment of the Trial Court is affirmed.