THE STATE OF NEW JERSEY IN THE INTEREST OF R.B.C.,
A JUVENILE DEFENDANT.

Juvenile and Domestic Relations Court
Cumberland County

July 28, 1981.

122

*Arnold Robinson*, Assistant Prosecutor, for plaintiff (*Kenneth A. Pagliughi*, Prosecutor, attorney).

*Ann Rubin*, Assistant Deputy Public Defender, for defendant (*Vincent J. Pancari*, Deputy Public Defender, attorney).

GRUCCIO, A. J. S. C.

R.B.C., a juvenile defendant, was charged under Docket J–1828–80 with two counts of illegal possession of a controlled dangerous substance (to wit, hashish and marijuana, respectively), in violation of *N.J.S.A.* 24:21–20(a)(4); one count of possession of marijuana with intent to distribute, in violation of *N.J.S.A.* 24:21–19, and one count of growing marijuana, in violation of *N.J.S.A.* 2A:170–25.1. The juvenile defendant now moves to suppress evidence, consisting of marijuana, hashish and drug paraphernalia seized pursuant to a search warrant issued on April 29, 1981.

The record reveals that on April 29, 1981 Officer Robert Hulitt of the Police Bureau of Millville, New Jersey, applied for a warrant to search the house in which the juvenile resides with his mother and father, his sister and his sister's boyfriend. The application was supported by Officer Hulitt's affidavit, also dated April 29, 1981. Officer Hulitt's affidavit recited the following facts as grounds to establish probable cause to search:

> An investigation into the activities of [R.B.C.] by this investigator. The officer was given information in reference to subject dealing marijuana at the senior high school and the millville [sic] public library. Subject is a junior at Memorial Senior High School and is approx. 17 yrs. of age white male brn.hair.
>
> The investigator started to periodic [sic] surveillance on his home located at [address deleted]. Subject has a lot of vehicle stop and either blow the horn or run in the upstairs of the home for short periods of time at various hours of the evening and night. The investigator re-interviewed the informant as to his knowledge and how he had obtained the same information. The informant has proven reliable in previous investigations such as Rocky Biggs inv., Battilini inv. Vineland, Garrett inv. etc.. The informant said that he had been in school with the subject. The informant then said that he had purchased marijuana from the subject through another juvenile now attending school. He said that the subject works part time at the library and with the building trade while at school. The informant said that he had purchased marijuana on two different times from [R.B.C.]. He said that along with the other subject they drove to the front of the home and blew the horn. [R.B.C.] came from a side door from upstairs and to them at the vehicle. He then would remove a leather pouch from under his shirt which contained various ounzes [sic]. On one of the sales the subject observed at least 20 different ounzes of marijuana. The informant said that [R.B.C.] talked freely and showed the subjects a quantity of monies of [sic] both occasions.
>
> The investigator checked with another informant who said that subject had been expelled for leaving school grounds at this time. They also said that he and other subject had been found in a wooded area by instructor during building trades time. The investigator feel [sic] that a search warrant is evident to continue the investigation into the activity of [R.B.C.].
>
> The investigator has several years of experience into narcotic drug investigations and training for such investigations.
>
> The investigator noted the only means of transportation subject uses if [sic] a creme ford [sic] N.J.Reg. 560MRd registered Penny Finch Hamilton Ave. Millville, N.J.

Based on Officer Hulitt's application and affidavit, the municipal judge of Millville issued a search warrant on April 29, 1981. It was executed the following day, and an inventory of the items seized is contained in the Appendix.

After it was executed, the judge filed the warrant, inventory and all other papers connected therewith with the county clerk. R. 3:5–6. The clerk's search warrant file regarding this matter contains the application for the search warrant, consisting of Officer Hulitt's affidavit, the search warrant, the return and the complaint of juvenile delinquency. It is clear that in issuing the warrant of April 29, 1981 the judge relied on the April 29, 1981 affidavit of Officer Hulitt.

The juvenile defendant argues that the April 29 affidavit in support of the search warrant was fatally defective in that it contained neither the dates nor times when any allegedly unlawful acts were observed at the juvenile defendant's home by informants or the police, nor the dates of any surveillance to corroborate same. The argument posits that the affidavit in question does not indicate when any of the alleged drug deals took place, or when any persons were seen going to the juvenile defendant's home or even who was seen inside the home. Special emphasis is placed upon the fact that four other persons were residing in the home, in addition to the juvenile defendant.

In order to determine if probable cause to believe the law is being violated exists at the time the search warrant is issued, *Sgro v. United States*, 287 *U.S.* 206, 53 *S.Ct.* 138, 77 *L.Ed.* 260, (1932), defendant cites *State v. Blaurock*, 143 *N.J.Super.* 476, 479 (App.Div.1976), for the proposition that one of the elements the court must consider is the lapse of time between the occurrence of the facts relied upon in the affidavit and the date the search warrant is issued. The juvenile defendant establishes that the *Blaurock* court held that 18 days between the issuance of a search warrant and the last reported surveillance of the defendant's apartment was not too remote in time to negate the conclusion that there was marijuana in the defendant's apartment at the time the warrant was issued. However, defendant herein cites *State v. Sager*, 169 *N.J.Super.* 38, 45 (Law Div.1979), to indicate that a lapse of 65 days between the affidavit and the issuance of the warrant was found to be too remote and would not justify the issuance of a search warrant. The affidavits in

*Blaurock* and *Sager* contained dates and time of surveillance of the premises to be searched which would have led the issuing judge to conclude reasonably that illegal drugs were present on those respective premises on the dates that the search warrants were issued. The juvenile defendant herein argues that the issuing municipal judge had no facts before him which would have indicated that the allegedly illegal activity at the juvenile defendant's home was still ongoing at the time the search warrant was issued. The juvenile defendant proposes that the absence of dates in the affidavit in the case at bar supports the probability that the alleged illegal activity could have occurred months or even years before the warrant was issued from the information that appears in the affidavit.

The State argues in opposition that, even if the information relied on to issue the warrant was more remote than it should be, that flaw must be counterbalanced by a consideration of the continuing nature of the illegal activity. The State demonstrates that the *Blaurock* court cited with approval *United States v. Johnson*, 461 *F*.2d 285 (10 Cir. 1972), which noted that counting the number of days between the occurrence of the facts relied upon and the issuance of the warrant cannot alone determine the vitality of the probable cause and the validity of the warrant. Concurrent with the time element, the nature of the unlawful activity must be taken into consideration. Secondly, the State argues that as the United States Supreme Court in *Michigan v. Defillippo*, 443 *U.S.* 31, 99 *S.Ct.* 2627, 61 *L.Ed.*2d 343 (1979), believed that an exclusionary rule which suppressed evidence seized pursuant to an invalid ordinance was too broad, the same result should be reached when the validity of a warrant is being challenged.

▪ *U.S.Const.*, Amend. IV, and *N.J.Const.* (1947), Art. I, par. 7, provide that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Unless there be "probable cause" to justify a conclusion by a neutral magistrate that a breach of the law is existing on such persons or premises at the time the warrant is issued, the search is presumptively unreasonable. *Sgro v. United States, supra*, 287 *U.S.* at 210, 53 *S.Ct.* at 140. In order to prevent invasions of privacy based on unfounded suspicion, a magistrate will issue a warrant only when the facts and circumstances of the alleged illegal activity appear to be within the affiant's knowledge and of which the affiant had reasonably trustworthy information. Such information will be deemed sufficient to sustain a finding of probable cause if a reasonable person acting prudently and cautiously would believe that the evidence in question will be found. The term "probable cause" has been defined as something more than unsupported suspicion, but less than proof beyond a reasonable doubt. *State v. Davis*, 50 *N.J.* 16, 23 (1967). Upon review, the affidavit "must be tested . . . in a common-sense and realistic fashion" in recognition of the fact that warrants "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 *U.S.* 102, 108, 85 *S.Ct.* 741, 746, 13 *L.Ed.*2d 684 (1965). The affidavit must not be couched in conclusory terms, since the magistrate must be in a position to know the underlying facts in order to render his neutral judgment. Wherever a question indicates a factual basis for a warrant, a reviewing court must examine it carefully to determine whether the facts were sufficiently specific to assure that the magistrate's judgment is more than a rubber stamp of the officer's conclusions.

Two warrants have particularly been rejected for failure to meet these standards. In *Aguilar v. Texas*, 378 *U.S.* 108, 84 *S.Ct.* 1509, 12 *L.Ed.*2d 723 (1964), the United States Supreme Court rejected a warrant based upon the statement that: "affiants have received reliable information from a credible person and do believe that [narcotics] . . . are being kept at the above described premises for sale and use contrary to the provisions of the law." In *Riggan v. Virginia*, 384 *U.S.* 152, 86 *S.Ct.* 1378, 16 *L.Ed.*2d 431 (1966), the United States Supreme Court held

insufficient an affidavit stating that the facts constituting probable cause were "personal observation of the premises" and "information from sources believed by the police department to be reliable."

A determination of probable cause by the issuing authority is entitled to great deference by the reviewing court because searches pursuant to warrants are preferred and to be encouraged. *Spinelli v. United States*, 393 *U.S.* 410, 419, 89 *S.Ct.* 584, 590, 21 *L.Ed.2d* 637 (1969); *Jones v. United States*, 362 *U.S.* 257, 270–71, 80 *S.Ct.* 725, 735–36, 4 *L.Ed.2d* 697 (1960). In reviewing the search warrant affidavit in the context of a motion to suppress, the court is limited to a consideration of the four corners of the affidavit. *Aguilar v. Texas, supra,* 378 *U.S.* at 109, n. 1, 84 *S.Ct.* at 1511, n. 1.

It is clear that the Fourth Amendment prohibition against unreasonable searches and seizures (*Wolf v. Colorado,* 338 *U.S.* 25, 69 *S.Ct.* 1359, 93 *L.Ed.* 1782 (1949)), and the exclusionary rule requiring that the result of a violation of this prohibition not be used as evidence against a defendant (*Mapp v. Ohio,* 367 *U.S.* 643, 81 *S.Ct.* 1684, 6 *L.Ed.2d* 1081 (1961); *Ker v. California,* 374 *U.S.* 23, 83 *S.Ct.* 1623, 10 *L.Ed.2d* 726 (1963)) have long been held binding on the states under the due process provisions of the Fourteenth Amendment. It follows, therefore, that the minimum standards to be followed in the procurement of search warrants are constitutionally identical in both the federal and state systems. *Aguilar v. Texas, supra,* 378 *U.S.* at 118, 84 *S.Ct.* at 1515 (Harlan, J., concurring).

Accordingly, it is pertinent to note (although not statutorily binding on us) the constitutionally mandated requirement as to timeliness embodied in the Manual For United States Commissioners 24 (1948) (as set out in *Durham v. United States,* 403 *F.*2d 190, 194 (9th Cir. 1968):

"A showing to the effect that the property to be seized was at the place to be searched a substantial time before the application is made does not justify the issuance of a search warrant, for the reason that during the intervening period the property may have been moved away. The facts must show that the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance of the search warrant."

See also *Durham v. United States*, supra at 194 n. 4, and the cases cited therein. [*Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819, 823, n. 4 (1973)].

This court shall apply these standards to the instant factual complex.

While neither party has cited a case which addresses a search warrant affidavit which omits altogether to state the time of occurrence of the facts recited therein, this court's independent research has revealed that the treatises and the cases cited therein establish that such an affidavit cannot show probable cause. See 68 *Am.Jur.2d, Searches and Seizures*, § 70 at 724; 1 *LaFave, Search and Seizures*, § 3.7 at 693; 79 *C.J.S. Search and Seizures* § 74 at 870.

In challenging the instant search warrant the juvenile defendant does not contend that either the surveillance or the informants were unreliable. Rather, he contends that if all the information received in the affidavit for the warrant is taken as true, still it does not amount to a showing of probable cause to believe that controlled dangerous substances would be found at his residence at the time that the warrant was issued. A statement of the rule to be applied in appraising this contention is recited in *Commonwealth v. Shaw*, 444 Pa. 110, 113–14, 281 A. 2d 897, 899 (1971), where the Pennsylvania Supreme Court said:

> In order for the issuance of a search warrant to be constitutionally valid, the issuing officer must reach the conclusion that probable cause exists at the time he issues the warrant. Such a decision may not be made arbitrarily and must be based on facts which are closely related in time to the date the warrant is issued. *Sgro v. United States*, (supra); *Durham v. United States*, 403 F.2d 190 (9th Cir. 1968); *Schoeneman v. United States*, 115 U.S.App.D.C. 110, 317 F.2d 173 (1963); and *Dandrea v. United States*, 7 F.2d 861 (8th Cir. 1925). See also IV *Wharton Criminal Law and Procedures* § 1546 (12th ed.1957), and authorities cited in 100 A.L.R.2d 525 (1965). If the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, unless it is also shown that the criminal activity continued up to or about that time.

Upon reading Officer Hulitt's statement of facts tending to establish probable cause in the instant application in a common-sense manner, *Rosencranz v. United States*, 356 F.2d 310, 314 (1 Cir. 1966); *United States v. Ventresca, supra,* 380 *U.S.* at

108–09, 85 *S.Ct.* at 746, the affidavit reveals at least this much: At sometime preceding the statement (perhaps days, months or even years), an informant who had been in school with the juvenile defendant apprised the officer that the juvenile defendant was dealing marijuana at the Memorial Senior High School in Millville and the Millville Public Library. As a result of the receipt of this information, the officer initiated a periodic surveillance of the juvenile defendant's home. After viewing a number of vehicular stops (accompanied by horn-blowing and individuals running upstairs in the home for short periods of time at various hours of the day and night) in front of defendant's home, the officer re-interviewed the informant as to his knowledge and the source of his information. The informant revealed that he had purchased marijuana twice from the juvenile defendant, once indirectly through another minor attending school and once directly in front of defendant's house. The officer consulted another informant, who informed him that the juvenile defendant had been expelled from school and that this informant and the juvenile defendant had been found in a wooded area by a school instructor during building trades time. While it may be plain that the municipal judge could regard this as "evidence of criminal activity at some prior time," it is equally plain that Officer Hullitt's statement "will not support a finding of probable cause as of the date the warrant issue[d], unless it [was] also shown that the criminal activity continued up to or about that time." *Commonwealth v. Shaw, supra.* The question this court must decide, therefore, is: Was it thus also shown? *Commonwealth v. Simmons, supra,* illustrates such a defect in a search warrant affidavit purporting to show probable cause to search for illegal drugs. In *Simmons* the search warrant affidavit recited that an informant "had purchased" drugs from the defendant. The *Simmons* court commented upon this recital as follows:

> Here, the affiant's information merely asserted that at some point in the past, which could have been a day, a week or months prior to the date of the affidavit, appellant had sold informant-Lohn marijuana. If we were to sustain the magistrate's determination [that this shows probable cause], the issuance of

search warrants would be allowed solely upon suspicion of criminal conduct, a standard far less demanding than that embodied in the Fourth Amendment. We cannot countenance such a deviation from explicit constitutional norms. "Indeed, if the affidavit [and sworn testimony] in this case be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for the magistrate." [Citations omitted.] "It is one thing to expect the magistrate to give a commonsense reading to facts set forth and to draw inferences from them. It is quite another thing to expect the magistrate to reach for external facts and to build inference upon inference in order to create a reasonable basis for his belief that a crime is *presently* being committed." [301 *A.2d* at 823]

Since there is no statement of any dates in the affidavit other than the date on which affiant signed the affidavit, any selection of time on this court's part would be clearly conjectural. So, too, must have been the municipal judge's determination.

However, a municipal judge may consider other facts in determining sufficient definiteness as to the time at which critical but undated events occurred. Use of words such as "recently" (*Waggener v. McCanless*, 183 *Tenn.* 258, 191 *S.W.2d* 551 (Sup.Ct.1946)); "within" (a named period) (*Hicks v. State*, 194 *Tenn.* 351, 250 *S.W.2d* 559 (Sup.Ct.1952)), "during" (a named period) (*Rugendorf v. United States*, 376 *U.S.* 528, 84 *S.Ct.* 825, 11 *L.Ed.2d* 887 (1964), reh. den. 377 *U.S.* 940, 84 *S.Ct.* 1330, 12 *L.Ed.2d* 303 (1964)), or "on many occasions" (*Jones v. United States*, 362 *U.S.* 257, 80 *S.Ct.* 725, 4 *L.Ed.2d* 697 (1960); 78 *A.L.R.2d* 233) have been held to be sufficient to save affidavits from indefiniteness as to time. It has also been held that dates in affidavits may be abbreviated (*Grace v. State*, 198 *Tenn.* 626, 281 *S.W.2d* 641 (Sup.Ct.1955); 100 *A.L.R.2d* 525, 533, § 5f), and that time may sufficiently be indicated by use of the present tense (*Borras v. State*, 229 *So.2d* 244 (Fla.1969), app. dism. and cert. den. 400 *U.S.* 808, 91 *S.Ct.* 70, 27 *L.Ed.2d* 37 (1970); 68 *Am.Jur.2d* at 725). Since none of these redeeming time indicators can be found on the face of the within affidavit, this court next considers the State's argument regarding the continuing nature of the alleged illegal activity.

The most cogent argument presented by the State in support of its opposition to suppression is that heavy reliance should be placed upon the nature of the alleged offense. The State argues

that a greater lapse of time between the facts supporting a finding of probable cause and the issuance of a warrant is permissible where the underlying activity is of a continuous nature as distinguished from an isolated violation. The State urges that at the time of the issuance of the warrant the municipal judge was not presented with an individual who possessed marijuana for his use alone, but one who directed a substantial drug sales operation in which he openly displayed both the marijuana he was selling and the money presumably obtained through such sales.

*United States v. Nilsen*, 482 *F.Supp.* 1335 (D.N.J.1980), is instructive in this regard. The factual complex in which the *Nilsen* court held that the warrants and their execution were valid involved a total of 17 search warrants issued by two different United States magistrates. The fifth search warrant, chronologically speaking, authorized the search of defendant's home and seizure of certain things if found therein. The first three warrants authorized the search and seizure of mail found in defendant's post office box. The fourth search warrant authorized a search of defendant's automobile. With minor variations, the 17 warrants disclosed that each succeeding search warrant affidavit recounted virtually verbatim the affidavit in support of the preceding warrant, and additionally set forth the results of the preceding search.

In rejecting defendant's argument that the observations contained in the affidavit filed in support of the fifth search warrant application were too stale to establish probable cause at the time of the warrant's issuance, the *Nilsen* court offered the following instruction:

> The timeliness of probable cause cannot be assessed in a factual vacuum. Rather, timeliness and its converse, staleness, must be measured by the *nature and regularity* of the allegedly unlawful activity.
>
> "Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. *However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.*" [Emphasis added]

United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972), *quoted in United States v. Harris,* 482 F.2d 1115, 1119 (3d Cir. 1973).

Questions of timeliness require "review on a case-by-case basis." *United States v. Harris, supra,* 482 F.2d at 1119. Here the magistrate could reasonably conclude that defendant had been engaged in on-going violations of the applicable statute over a three-year period. Even more importantly, he could independently determine from the affidavit that "there was no reason to believe that this operation had ceased." *United States v. Forsythe,* 560 F.2d 1127, 1132 (3d Cir. 1977). "Considering the nature of the items named in the [fifth] warrant, it was reasonable to expect that they would remain in defendant's possession and on his premises for some period of time, at least for a month." *United States v. Matthews,* 572 F.2d 208, 209 (9th Cir. 1977) *(per curiam) citing Andresen v. Maryland,* 427 *U.S.* 463, 478–79 n. 9, 96 *S.Ct.* 2737 [2747–48 n. 9], 49 *L.Ed.2d* 627 (1976). [at 1339]

All this court was told—and all the issuing municipal court judge was told—about *how often* or *when* these drug transactions occurred is that on two occasions an informant bought drugs from the juvenile defendant, once directly and another time indirectly. The affidavit also reveals periodic surveillance of the juvenile defendant's house. How many prior incidents do they refer to? And when did these occur? The application of "commonsense usage" will not answer these questions, for by such usage these noted incidents may refer to very few, and very old, prior incidents.

 The correctness of this analysis is confirmed by the conduct of the investigating officer. Officer Hulitt did not consider that, after talking to the first informant, he had probable cause to believe that the criminal activity described by the informant still continued; to learn whether it did, he initiated a surveillance. This was good police practice, for it is clear that an informant's tip, in itself insufficient to establish probable cause, may become sufficient when corroborated by independent observation. Here, however, the application for the warrant does not reveal when the surveillance occurred or whether it was long enough to provide corroboration. The application does not identify or describe these persons in any way. These individuals may be residents of the juvenile defendant's home, for all that an independent reviewer of the affidavit may conclude. The affidavit does not indicate whether these individ-

uals who stopped in front of the juvenile defendant's home came separately or together. It does not recite how long or how short the period was. The question arises whether these individuals perhaps remained maybe half an hour or, finding no one inside, left. Most important, the affidavit does not say what is meant by "run in the upstairs of the home."

Thus, the conclusion is inescapable that the requirement that there be evidence of criminal activity up to or about the time the warrant issued was not satisfied. The warrant did not establish continuity because there were no underlying circumstances recited to support the allegation that at the time of the warrant's issuance the alleged criminal activity was ongoing.

> It will be observed from the cases that the amount of acceptable delay will vary, both with the nature of the contraband and with the nature of the evidence of continued criminal activity. If the contraband is of a sort not easily disposed of, the evidence of continued criminal activity may be weaker, and the amount of delay longer; but where the contraband is easily disposed of, the evidence of continued criminal activity must be stronger, and the amount of delay shorter. [Spaeth, J., dissenting; *Commonwealth v. Stamps*, 260 *Pa.Super.* 108, 393 *A.2d* 1035 at 1041]

Here, the contraband was easily disposed of, and there was substantially no evidence of continued criminal activity.

Accordingly, the affidavit of Officer Hulitt inadequately establishes probable cause for issuance of a search warrant; the search warrant issued by the municipal judge is correspondingly fatally defective, and the evidence seized in the search pursuant to the warrant is inadmissible.

Since the holding in *Michigan v. DeFillippo*, 443 *U.S.* 31, 99 *S.Ct.* 2627, 61 *L.Ed.2d* 343 (1979), rests on the premise that the officer who arrested the defendant had probable cause to believe that defendant's conduct violated a presumptively valid city ordinance and that the search of the defendant's person was pursuant to a valid arrest, reliance by the State on this case is misplaced.

Perceived sins of omission in the within affidavit rendered it fatally defective. The requirement that due deference be given to the municipal judge's decision below does not

automatically and uniformly imply an *imprimatur*. Whatever might in theory be said either way, the choice between the dangers of suppressing controlled dangerous substances and the dangers of their misuse if they are freely available is, ultimately, a choice that the Fourth Amendment makes for us.